Frances Jeanette FRYE, Individually and as next friend for James William Reed, a minor, Appellants,

v.

Judge Joseph M. CROWELL and James Morris Reed, Appellees.

Supreme Court of Tennessee.

April 3, 1978.

John R. Meldorf, Chattanooga, for appellants.

Robert L. Shevin, Atty. Gen., Joe Belitzky, Asst. Atty. Gen., Tallahassee, Fla., Larry H. Hipsh, Sr., Pensacola, Fla., for appellees.

## OPINION

BROCK, Justice.

This suit, presenting an interstate dispute involving custody of the minor child of divorced parents, is brought under both the Civil Rights Act of 1866, 42 U.S.C. §§ 1983 et seq., and under "the laws of the State of Tennessee." Plaintiffs, the mother and her minor child, seek to enjoin the defendants, Joseph M. Crowell, a judge of the Circuit Court of Escambia County, Florida, and James Morris Reed, the child's father, from "harassing" them in violation of the laws. Plaintiffs also seek compensatory and punitive damages because of defendants' alleged harassment. Upon defendants' motions asserting lack of jurisdiction of the persons of defendants or of subject matter, the trial court dismissed the action. Plaintiffs have appealed the dismissal to this Court.

No evidence was introduced in the trial court and the matter was determined solely upon the complaint and motions to dismiss. In December of 1971 plaintiff Frye was granted a divorce from her husband, James Morris Reed, by the Circuit Court of Hamilton County, Tennessee, and custody of the couple's minor child, James William Reed, was awarded to her.

Plaintiff Frye subsequently moved to California with her new husband and the child. In November of 1975 Judge Crowell entered an ex parte order awarding custody of the child to the father, finding, as a matter of fact, that the child had been neglected in California. The complaint alleges that Judge Crowell later explained in open court that

". . . he had received a phone call from an individual identifying himself as a police officer in California who said that the child was abandoned there and that Welfare did not want to keep him

and would he enter an order so that the father could come pick up the child because they did not know where the mother was."

In December of 1975 Judge Crowell entered another order, again placing custody of the child with the father. The complaint alleges that both orders handed down by Judge Crowell were entered with malice toward the plaintiffs and "in clear and knowing violation of his jurisdiction."

After entry of the second order giving custody of the child to the father, defendant Reed assumed custody of the child, taking him to Florida where he currently resides.

Subsequently, in February of 1976, Judge Crowell reversed his previous two orders placing custody of the Reed child with the father, concluding that the court lacked personal jurisdiction over both the mother and child. The complaint alleges that the father maintains custody of the child by virtue of a subsequent writ of habeas corpus. While the complaint sets forth no details regarding the habeas corpus petition, plaintiffs characterize it as invalid.

Plaintiff Frye and her new husband have apparently moved back to Tennessee where she has filed this suit seeking to permanently enjoin the defendants from harassing her and her son. Plaintiffs further seek compensatory damages of $250,000 each for pain and suffering, $500,000 each as punitive damages and their expenses and attorneys' fees in defending against the actions of the defendants.

Both defendants, appearing specially, filed motions to dismiss due to lack of personal jurisdiction, lack of subject matter jurisdiction, arguing that Tennessee state courts cannot hear federal civil rights cases brought pursuant to 42 U.S.C. §§ 1983, et seq., and that defendant Crowell is protected by judicial immunity from suit, failure to state a claim upon which relief can be granted, improper venue and, in the case of defendant Reed, improper service of process.

The trial court sustained defendants' motions generally and dismissed the suit. Because this case was heard and appealed prior to the 1977 amendment of T.C.A., § 16–408, appeal was taken to this Court.

The facts as presented in plaintiffs' complaint poignantly illustrate the plight of the "interstate child"—an apt phrase coined by Professor Ehrenzweig and descriptive of the rootlessness of children shifted from state to state, victims of custody battles fought in the courts of more than one state. See Ehrenzweig, *The Interstate Child and Uniform Legislation: A Plea for Extralitigious Proceedings*, 64 *Mich.L.Rev.* 1 (1965).

This suit, however, does not seek to litigate again the question of the Reed child's custody but is a suit to enjoin the judge and the child's father from "harassing" the plaintiffs and to recover damages against the defendants.

Finding it unnecessary to consider any issue other than the question of personal jurisdiction over the defendants, we affirm the trial court's dismissal of plaintiffs' suit.

Plaintiffs insist that personal jurisdiction over these defendants is authorized by our "long-arm" statute, T.C.A., § 20–235:

"Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

\*     \*     \*     \*     \*     \*

(b) Any tortious act or omission within this state;

\*     \*     \*     \*     \*     \*"

Citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), the plaintiffs argue that an act taking place outside the state of Tennessee but having effect within the state of Tennessee may serve as the basis for application of the long arm statute. Plaintiffs rely on two acts which they allege have had an effect in Tennessee sufficient to justify the reach of our long-arm statute: (1) the contravention of a valid Tennessee order of child custody and (2) the deprivation of the civil rights of two domiciliaries of the State of Tennessee.

We are of the opinion, however, that sufficient contacts relevant to the alleged cause of action do not exist between either of the defendants and the State of Tennessee to justify "long arm" jurisdiction over their persons. As the court stated in *Mohasco, supra*, at 381:

"[T]hree criteria emerge for determining the present outerlimits of *in personam* jurisdiction based on a single act. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*See also Hanson v. Denckla*, 357 U.S. 235, 251, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The facts alleged do not meet this test.

In our opinion, exercise of personal jurisdiction over these defendants would offend "traditional notions of fair play and substantial justice," *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). We, therefore, affirm the trial court's dismissal of this suit.

Costs are taxed against appellants.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.