James E. McCOMBS and wife Emma McCombs, Plaintiffs-Appellees,

v.

CERCO RENTALS, A Division of H. B. Owsley & Sons, Inc. and H. B. Owsley & Sons, Inc., Potain Corp., Potain America, Inc., and Powell Construction Co., Inc., Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

March 31, 1981.

Application for Permission to Appeal Denied by Supreme Court July 13, 1981.

Joseph O. Fuller, J. Robert Boatright, Kingsport, for defendant-appellant Potain, S.A.

William W. Hawkins, Kingsport, for plaintiffs-appellees.

## OPINION

GODDARD, Judge.

In this interlocutory appeal, Potain, S.A., Defendant-Appellant, a French manufacturer, insists that the Law Court of Sullivan County erred in denying its motion to dismiss the claim filed by J. E. McCombs and wife Emma McCombs, Plaintiffs-Appellees, premised upon want of personal jurisdiction. Potain, S.A. contends that under the facts of this case T.C.A. 20–235, Tennessee's long-arm statute, cannot be the basis for a Tennessee court exercising personal jurisdiction, and, alternatively, that if the statute is so broadly construed it is invalid under the due process clause of the Fourteenth Amendment of the United States Constitution.

Potain, S.A., a French corporation, manufactured a tower crane, Model 776, in France and exported it to the United States, whereupon it was sold on September 5, 1973, to H. B. Owsley & Sons, Inc., a North Carolina corporation, through Potain, Inc., a wholly-owned subsidiary of Potain, S.A. and its exclusive North American distributor. On July 15, 1976, H. B. Owsley & Sons, Inc. and Potain, S.A. entered a contract, which became effective August 1, 1976, whereby Potain America, Inc., which was to be incorporated by H. B. Owsley & Sons, Inc., with assets purchased from Po-

tain, Inc., would become the exclusive sales agent in the United States and Canada for all tower cranes, parts and accessories manufactured by Potain, S.A. On July 20, 1976, Cerco Rentals, a leasing subsidiary of H. B. Owsley & Sons, Inc., leased the crane to Cassell Brothers, Inc., a Tennessee corporation, for use in the construction of a hospital in Kingsport, Tennessee. On August 1, 1976, H. B. Owsley & Sons, Inc., purchased the assets of Potain, Inc., and incorporated Potain America, Inc., under the laws of North Carolina, as a wholly-owned subsidiary of H. B. Owsley & Sons, Inc. The McCombs allege that on March 25, 1977, while in use at the hospital construction site in Kingsport, the crane malfunctioned causing them to suffer damages. There is no showing of any other connection between Potain, S.A. and the State of Tennessee.

The Appellees effected service of process on Potain, S.A. pursuant to T.C.A. 20–235, which provides in pertinent part:

Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

. . . .

(b) Any tortious act or omission within this state;

. . . .

(f) Any basis not inconsistent with the constitution of this state or of the United States.

. . . .

"Person" as used herein shall include corporations and all other entities which would be subject to service of process if present in this state.

▮ It is apparent from the explicit language of subsection (f) and from reference to T.C.A. 20–240 which states that the long-arm statute is remedial in nature and is to be liberally construed, that the scope of the statute fully extends to the bounds imposed by the due process clause of the Fourteenth Amendment of the United States Constitu-

tion. *W. G. Bush & Co. v. Sioux City & New Orleans Barge Lines*, 474 F.Supp. 537 (M.D.Tenn.1977); *Walker v. Kawasaki Motors Corp.*, 62 F.R.D. 607 (E.D.Tenn.1973); *W. B. Dunavant & Co. v. Perkins*, 498 S.W.2d 905 (Tenn.1973). Even prior to the time the Tennessee Legislature clearly manifested this intent by enacting subsection (f) as an amendment to T.C.A. 20–235, courts construed the statute to extend to the limits of due process. *Kroger Co. v. Dornbos*, 408 F.2d 813 (6th Cir. 1969); *Darby v. Superior Supply Co.*, 224 Tenn. 540, 458 S.W.2d 423 (1970).

▮ Whether subsection (f) actually expanded the scope of T.C.A. 20–235 is a controversy we need not enter into here. Compare *Pickens v. Hess*, 573 F.2d 380 (6th Cir. 1978) and *Gullett v. Qantas Airways Ltd.*, 417 F.Supp. 490 (M.D.Tenn.1975). Where a defendant commits a tortious act outside the State of Tennessee which proximately causes damages to be sustained within the State, the tort is deemed to have occurred within the State, and T.C.A. 20–235(b) is applicable. *Kroger Co. v. Dornbos*, supra; *Walker v. Kawasaki Motors Corp.*, supra; *Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240 (Tenn.1972); *Hanvy v. Crosman Arms Co.*, 225 Tenn. 262, 466 S.W.2d 214 (1971). Thus, the only relevant inquiry here is whether the due process clause of the Fourteenth Amendment of our Federal Constitution permits a Tennessee state court to exercise personal jurisdiction over a French manufacturer where its only connection with Tennessee is that one of its cranes entered this country through its wholly-owned subsidiary and was sold to an independent middleman which, while under contract to become the manufacturer's exclusive North American distributor, leased the crane to a Tennessee corporation for use in Tennessee, where damage occurred.

In the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the United States Supreme Court declared:

[D]ue process requires only that in order to subject a defendant to a judgment in

personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

The Court expounded upon this minimum contacts test in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958):

> The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), was a case wherein personal jurisdiction was asserted under T.C.A. 20–235(a), which provides for jurisdiction over non-residents who engage in the transaction of any business in Tennessee as to any action or claim for relief arising out of that business transaction. The Sixth Circuit distilled from the relevant Supreme Court cases three criteria for determining the outer limits of personal jurisdiction where it is based on a single act (401 F.2d at 381):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

As to the first criterion, the Court stated that "the defendant has purposefully availed himself of the opportunity of acting [in the state] if he should have reasonably foreseen that the transaction would have consequences in that state."

The three-prong test of *Southern Machine Co.* has been widely quoted and applied as a set of guidelines for making the ultimate determination of whether it was reasonable in a particular case for a Tennessee court to exercise jurisdiction over a non-resident defendant. Although the *Mohasco* case involved T.C.A. 20–235(a), its rule has been applied in cases which, like this case, were based upon T.C.A. 20–235(b). See *Frye v. Crowell*, 563 S.W.2d 788 (Tenn. 1978).

■ Courts have held that where jurisdiction is sought upon the basis of a tort which occurred within the state, rather than merely upon the basis of a defendant doing unrelated business within the state, that it is not unreasonable nor unjust to hold the defendant answerable when the defendant has voluntarily placed its products into the channels of national commerce for ultimate use in another state and these channels have carried the product to Tennessee where it has caused damages. This holds true even where the product has entered the state through an independent middleman. *McCoy v. Wean United, Inc.*, 67 F.R.D. 491 (E.D.Tenn.1973); *Walker v. Kawasaki Motors Corp.*, supra; *Tate v. Renault, Inc.*, 278 F.Supp. 457 (E.D.Tenn. 1967), affirmed 402 F.2d 795 (6th Cir. 1968). See *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). Where a tort within the state is the basis for jurisdiction, the second *Mohasco* criterion is satisfied. The first criterion is satisfied by the defendant voluntarily injecting his product into the stream of interstate commerce, by which he should have reasonably foreseen that consequences could result in Tennessee. The injury in the state to a Tennessee resident makes the exercise of jurisdiction reasonable, satisfying the third criterion.

The Appellant cites and relies upon the recent case of *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in which the United States Supreme Court held that an Oklahoma court lacked personal jurisdiction over a New York automobile retailer and a wholesaler who distributed in New York, New Jersey, and Connecticut where their only contact with the forum state was that

a car sold in New York to New York residents was involved in an accident while passing through Oklahoma. The plaintiffs there argued that, although neither defendant made any sales in Oklahoma nor solicited any, and there was no evidence that any other car sold by them had ever even entered the state, it was foreseeable that a car sold by them would cause injury in Oklahoma. The Court responded (100 S.Ct. at 567):

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.
>
> ... if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Compare *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

In his dissent, Justice Marshall called attention to the dicta in the second paragraph of the above-quoted language of the majority opinion, stating, "The majority apparently acknowledges that if a product is purchased in the forum State by a consumer, that State may assert jurisdiction over everyone in the chain of distribution." Justice Brennan, also in dissent, made the same point.

Thus, *World-Wide* is distinguishable from the case before us. In *World-Wide* the injury-producing product entered the state by the mere fortuity that a New York resident who purchased the automobile in New York drove it into Oklahoma. Here the crane entered Tennessee through a chain of distribution initiated by Potain, S.A. This case is more analogous to *Gray v. American Radiator & Standard Sanitary Corp.*, supra, which was contrasted with *World-Wide* in the quoted portion of the Supreme Court opinion. In *Gray* an Ohio manufacturer of a safety valve was subjected to the personal jurisdiction of an Illinois court when an Illinois resident was injured in Illinois by the explosion of a hot water heater. The Ohio-manufactured safety valve had been incorporated into the water heater in Pennsylvania prior to the water heater being sold to a consumer in Illinois. The record did not reveal that the defendant had done any other business in Illinois, either directly or indirectly. *Gray* was cited and relied upon by the United States District Court for the Eastern District of Tennessee in *Tate v. Renault, Inc.*, supra. The holdings of these cases were not disturbed by the holding in *World-Wide*.

In a well-reasoned opinion filed after *World-Wide*, the Fifth Circuit held in *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980), that a Japanese manufacturer of cigarette lighters which were sold and delivered to Scripto in Japan and then marketed nationwide in the United States by Scripto pursuant to an exclusive distributor agreement was subject to personal jurisdiction in a federal district court in Texas wherein a lighter was purchased through a middleman and allegedly caused injury, although there was no evidence the manufacturer had any other contacts with Texas or the United States. The Fifth Circuit held that the imposition of personal jurisdiction was (1) consistent with both the holding and dicta in *World-Wide*; and (2) reasonable and fair since the manufacturer delivered millions of lighters to Scripto with the understanding Scripto would be the exclusive United States distributor and would be selling them to national retail concerns, without the manufacturer in any way attempting to limit the states in which they would be sold.

The fact in our case that only one product, of far greater value, entered Tennessee as opposed to the many disposable lighters which presumably entered Texas does not distinguish the case. The logic alluded to in the dicta in *World-Wide* and embraced in *Oswalt* is equally applicable to the case before us.

A Tennessee state court may properly exercise personal jurisdiction over Potain, S.A. in this matter. Potain, S.A. exported its products to the United States for distribution throughout this country. The record reveals no evidence that Potain, S.A. either intended or anticipated distribution to be limited to the State of North Carolina or to otherwise exclude Tennessee, or made any efforts to so limit its distribution. Potain, S.A. could reasonably anticipate being haled into a Tennessee court to answer to a product liability claim. Potain, S.A. indirectly availed itself of the laws of Tennessee by injecting its product into the stream of national commerce through which it was eventually, in the normal chain of distribution, leased to a Tennessee corporation for use in Tennessee. The cause of action arises directly from the intended use of that product in Tennessee, by which a Tennessee citizen was injured. The tort occurred in Tennessee, presumably most of the prospective witnesses are in this State, and Tennessee's substantive law is applicable. The exercise of personal jurisdiction is both just and reasonable.

The order of the Law Court for Sullivan County overruling the motion to dismiss the action against Potain, S.A. is affirmed and the cause remanded for further proceedings not inconsistent with this opinion. The costs of appeal are adjudged against Potain, S.A. and its surety.

PARROTT, P. J., concurs.

SANDERS, J., dissents.

SANDERS, Judge, dissenting.

I respectfully dissent from the majority opinion in that I do not think Potain, S.A. had the minimum contact with the State of Tennessee as required under the holding in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and is contra to the holding in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Perhaps the principal basis for my disagreement with my colleagues is that I do not think the crane "entered Tennessee through a chain of distribution initiated by Potain, S.A." as stated in the majority opinion. In my view, the crane entered Tennessee through a chain of circumstances unrelated to any activity by Potain, S.A. or its distributor. The fact that H. B. Owsley & Sons, Inc., formed a subsidiary corporation, Potain America, Inc., which purchased the assets of Potain, Inc., and became the distributor for Potain, S.A. should be ignored in our determination of the case, as it only serves to confuse the real issue. After the crane was sold to Owsley & Sons, Inc., neither Potain, S.A. nor its distributor had any further connection with it.

With this side issue removed, we come to a simple set of facts. Potain, S.A. manufactured a crane in France. It shipped the crane to its distributor in New York. The distributor sold the crane to a North Carolina corporation. The North Carolina corporation leased the crane to a Tennessee corporation for use in Tennessee. While operating the crane in Tennessee Plaintiff McCombs was injured as the result of an alleged defect in the crane. Potain, S.A. has never had any contact of any nature with the State of Tennessee. In the *International Shoe Co.*, case the court said:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."

Under the facts in the case at bar we ask: How has this criterion been met? The majority opinion seems to answer this question by saying that Potain, S.A. placed its product in the stream of commerce and it was

foreseeable that the crane might reach the State of Tennessee and cause the injury there. As supportive of their position they quote the following from the *World-Wide Volkswagen* case:

"[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. *Rather, it is that the defendant's conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there." (Emphasis ours.)

It will be observed that the critical point of foreseeability is "the defendant's conduct or connection with the forum state." What was the conduct or connection that Potain, S.A. had with the State of Tennessee to bring it within the foreseeable rule?

They further quote from *World-Wide Volkswagen*:

" . . . if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen *is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly the market for its product in other States*, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Compare *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). (Emphasis ours.)

Again, it is observed it "is not simply an isolated occurrence but arises from the efforts of the manufacturer or distributor to serve directly or indirectly the market for its product in other states." In my view, whatever connection, if any, there is between Potain, S.A. and the State of Tennessee, it is an isolated occurrence. Then we ask: What efforts are shown to have been made by Potain, S.A., or its distributor to

market cranes in Tennessee? The majority opinion answers these questions by saying, "Here the crane entered Tennessee through a chain of distribution initiated by Potain, S.A." I cannot agree that the record supports this conclusion. In my view, the holding in the majority opinion stands for the proposition that when the manufacturer of a product places it in the stream of commerce and it is foreseeable that it may go into other states and, due to a defective condition, a person is injured in Tennessee, Hawaii, Alaska, or any other state, that state can exercise in persona jurisdiction over the manufacturer even though there has been no other contact. In addressing the due process requirement, the *World-Wide Volkswagen* court quoted with approval as follows, 100 S.Ct. at 565:

" 'As technological progress has increased the flow of commerce between the States, the need for jurisdiction over non-residents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over non-residents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. [Citation omitted.] Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.' "

In addressing foreseeability, the court said, 100 S.Ct. at 566:

"If foreseeability were the criterion a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there, see *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 507 (CA4 1956); a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage

caused in New Jersey, *Reilly v. Phil Tolkan Pontiac, Inc.*, 372 F.Supp. 1205 (N.J. 1974); or a Florida soft drink concessionaire could be summoned to Alaska to account for injuries happening there, see *Uppgren v. Executive Aviation Services, Inc.*, 304 F.Supp. 165, 170–171 (Minn. 1969). Every seller of chattels would in effect appoint the chattel his agent for services of process. His amenability to suit would travel with the chattel. We recently abandoned the outworn rule of *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), that the interest of a creditor in a debt could be extinguished or otherwise affected by any State having transitory jurisdiction over the debtor. *Shaffer v. Heitner, supra*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Having inferred the mechanical rule that a creditor's amenability to a *quasi in rem* action travels with his debtor, we are unwilling to endorse an analogous principle in the present case."

I find the majority view persuasive; however, I think its application goes beyond precedent cases and I would feel compelled to reverse.