BARBARA ANN BUSH v. BASF WYANDOTTE CORPORATION, BERMIL INDUSTRIES, D/B/A WASCOMAT OF AMERICA, ELECTROLUX, AB, CTC AKTIEBOLAGET, CORONAVERKEN AKTIEBOLAGET, UNIMAX GROUP, INC., MAGNETIC DEVICES, LTD., AND BOGGS AND COMPANY, INC.

No. 8227SC840

(Filed 20 September 1983)

1. Process § 14— jurisdiction over Swedish corporations—statutory basis

In an action to recover for personal injuries received by plaintiff while operating a washing machine manufactured by defendant Swedish corporations, an allegation that products manufactured by defendants were being used in North Carolina in the ordinary course of trade at the time of the injury was sufficient to give the courts of this State personal jurisdiction over defendants under G.S. 1-75.4(4)b.

2. Process § 14— service on Swedish corporations

Plaintiff's method of service of process on defendant Swedish corporations was sufficient where the clerk of superior court sent the summons and complaint to the North Carolina Secretary of State, and the Secretary of State then sent the summons and complaint to defendants' business address in Sweden by registered mail, return receipt requested.

---

Bush v. BASF Wyandotte Corp.

---

**3. Constitutional Law § 24.7; Process § 14.3— assertion of personal jurisdiction over Swedish corporations—due process**

The assertion of personal jurisdiction over defendant Swedish corporations in an action to recover for personal injuries received by plaintiff while operating a washing machine manufactured by defendants did not violate due process since defendants, by injecting its products into the stream of national commerce by selling them to a distributor in New York without any indication that they desired to limit the area of distribution so as to exclude North Carolina, had sufficient minimum contacts with North Carolina and could reasonably expect to be subjected to the jurisdiction of the courts of this State.

APPEAL by plaintiff, Barbara Ann Bush, and defendant, BASF Wyandotte Corporation, from *Cornelius, Judge*. Judgment entered 10 March 1982 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 20 May 1983.

Plaintiff-appellant, Barbara Ann Bush, filed an action on 27 April 1981 seeking damages for personal injuries she received while operating a washing machine for her employer, Kings Mountain Convalescent Center. Among the party-defendants named in the complaint was BASF Wyandotte Corporation (hereinafter BASF), a Michigan corporation which allegedly programmed and prepared the washing machine's program card so that the machine could utilize BASF's detergent products. Also named as defendants were CTC Aktiebolaget (hereinafter CTC) and Coronaverken Aktiebolaget (hereinafter Coronaverken), Swedish corporations who allegedly manufactured the washing machine plaintiff was operating at the time of her injury. The complaint alleged that CTC and Coronaverken had sold this washing machine to Bermil Industries, an independent distributor with its principal place of business in New York, who in turn sold the machine to plaintiff's North Carolina employer.

Defendant-appellant BASF answered and filed cross-claims for contribution and indemnification from the other defendants, including CTC and Coronaverken. On 11 June 1981 defendants CTC and Coronaverken moved to have plaintiff's claim against them dismissed for lack of personal jurisdiction. A sworn affidavit in support of the motion to dismiss stated that:

2. Both of said corporations were incorporated in Sweden and neither of them maintain any agents or employees in the United States of America.

3. The only contact CTC had with the United States of America is the sale prior to 1974 of certain machinery manufactured by it which was conducted through an independent distributor, Bermil Industries. The terms of sale for all machines operated by the corporation was F.O.B. Gothenbourg, Sweden and all agreements between the corporation and Bermil Industries were negotiated in Europe as were all extensions and modifications of the agreement.

4. CTC never shipped equipment into the State of North Carolina nor has it had any contacts with the State of North Carolina.

Answers to plaintiff's interrogatories further tended to show that CTC and Coronaverken had had no purposeful direct contact with North Carolina at any time or in any manner whatsoever.

On 10 March 1982 the trial court allowed CTC's and Coronaverken's motion to dismiss. From a judgment entered pursuant to that motion, plaintiff and defendant BASF appeal.

*Roberts & Planer, by Joseph B. Roberts, III, for plaintiff-appellant Barbara Ann Bush.*

*Hollowell, Stott, Hollowell, Palmer & Windham, by Grady B. Stott and Jeffrey M. Trepel, for defendant-appellant BASF Wyandotte Corporation.*

*Fairley, Hamrick, Monteith & Cobb, by S. Dean Hamrick and F. Lane Williamson, for defendant-appellees CTC-Aktiebolaget and Coronaverken-Aktiebolaget.*

EAGLES, Judge.

I.

The issue involved here is whether, by placing their product into the stream of American commerce so that it reaches consumers in North Carolina by means of the commercial distribution activity of others, CTC and Coronaverken have sufficient contact with North Carolina so that exercise of jurisdiction is lawful when a North Carolina resident is injured by defects in that product. We hold that the North Carolina courts may lawfully assert jurisdiction over the Swedish manufacturers, CTC and Coronaverken.

The question of personal jurisdiction over a foreign corporation must be resolved through a bifurcated inquiry. We must first determine whether a North Carolina statute permits the exercise of jurisdiction over the defendant and, secondly, whether the exercise of that statutory power will violate the due process clause of the United States Constitution's Fourteenth Amendment. *Hankins v. Somers*, 39 N.C. App. 617, 251 S.E. 2d 640, *rev. denied*, 297 N.C. 300, 254 S.E. 2d 920 (1979).

[1] We begin by noting that, under the holding in *Marshville Rendering Corp. v. Gas Heat Engineering Corp.*, 10 N.C. App. 39, 177 S.E. 2d 907 (1970), G.S. 55-145(a)(4) does not provide a statutory basis for assertion of jurisdiction over defendant-appellees on the facts of this case. But the language of G.S. 1-75.4(4)b permits the assertion of personal jurisdiction over CTC and Coronaverken under the facts in this case.

That statute provides that

> A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure under any of the following circumstances:
>
> (4) Local Injury; Foreign Act. — In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this state arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either
>
> . . .
>
> b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade.

The unverified complaint stated:

> 4. That the defendants CTC Aktiebolaget, Coronaverken Aktiebolaget and Electrolux AB are Swedish corporations doing business in this state and which manufacture and/or sell goods for use in the ordinary course of business in this state.

The allegation that products manufactured by CTC and Coronaverken were being used in North Carolina in the ordinary course of trade at the time of the injury was sufficient to satisfy the statutory requirements of G.S. 1-75.4(4)b. In general, pleadings need not be verified and no lack of credibility will be implied by the absence of a verification of plaintiff's complaint. G.S. 1A-1, Rule 11(a); *Hankins v. Somers, supra.* The plaintiff met his initial burden of proving the existence of jurisdiction by a *prima facie* showing that the statutory requirements had been met, and defendant-appellees did not contradict plaintiff's allegations in their sworn affidavit or their verified answers to plaintiff's interrogatories. *Hankins v. Somers, supra.* We hold that G.S. 1-75.4(4)b permits the exercise of jurisdiction over defendant-appellees and that the first requirement for assertion of personal jurisdiction over a foreign corporation has been met.

## II.

[2] CTC and Coronaverken also assert that plaintiff's method of service of process was insufficient. G.S. 1A-1, Rule 4(j3)(iv) provides that

> Where service is to be effected upon a party in a foreign country, in the alternative service of the summons and complaint may be made . . . or (iv) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served.

The original record reveals that the Clerk of the Superior Court addressed and dispatched the civil summons and complaint against CTC and Coronaverken to the North Carolina Secretary of State, the defendant-appellees' agent for the purpose of service of process under G.S. 55-145(c). *See* Shuford, North Carolina Civil Practice and Procedure § 4-12 (2nd ed. 1981). That statute provides

> In any case where a foreign corporation is subject to suit under this section and has failed to appoint and maintain a registered agent upon whom process might be served, or whenever such registered agent cannot with reasonable diligence be found at the address given, then the Secretary of State shall be an agent of such corporation upon whom any process in any such cause of action may be served.

The Secretary of State sent the summons and complaint to CTC's and Coronaverken's business addresses in Sweden by registered mail, return receipt requested. This procedure met the service of process requirements of G.S. 1A-1, Rule 4(j3)(iv). We therefore reject defendant-appellees' allegation of insufficient service of process.

### III.

[3] We now address the issue of whether, under the facts of this case, assertion of jurisdiction over defendant-appellees pursuant to G.S. 1-75.4(4)b violates the due process clause. Our courts may exercise personal jurisdiction over defendant-appellees only upon a determination that the requirements of due process have been met. In making this determination we gain guidance from decisions in other jurisdictions considering fact situations similar to ours in light of the United States Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L.Ed. 2d 490, 100 S.Ct. 559 (1980).

We note that the situation presented in *World-Wide* is dissimilar to the one we face in this case, but we recognize, as have other courts, that *World-Wide* contains instructive language suggesting when jurisdiction may be lawfully asserted. *See Svendsen v. Questor Corp.*, 304 N.W. 2d 428 (1981), *Ford Motor Co. v. Atwood Vacuum Machine Co.*, 392 So. 2d 1305, *cert. denied* 452 U.S. 901, 69 L.Ed. 2d 401, 101 S.Ct. 3024 (1981). The Supreme Court held in *World-Wide* that the exercise of personal jurisdiction over an automobile retailer and regional distributor, whose sole connection with the forum state consisted of the fact that the automobile-related injury had occurred there, was incompatible with the due process clause. In so holding that Court stated

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. See *Kulko v California Superior Court*, supra, at 97-98, 56 L Ed 2d 132, 98 S Ct 1690; *Shaffer v Heitner*, 433 US, at 216, 53 L Ed 2d 683, 97 S Ct 2569; and see id., at 217-219, 53 L Ed 2d 683, 97 S Ct 2569 (Stevens, J., concurring in judgment). The Due Process Clause, by ensuring the "orderly administration of

the laws," *International Shoe Co. v Washington*, 326 US, at 319, 90 L Ed 95, 66 S Ct 154, 161 ALR 1057, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v Denckla*, 357 US, at 253, 2 L Ed 2d 1283, 78 S Ct 1228, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Compare *Gray v American Radiator & Standard Sanitary Corp.*, 22 Ill 2d 432, 176 NE 2d 761 (1961).

444 U.S. at 297-98, 62 L.Ed. 2d at 501-02, 100 S.Ct. at 567.

To appreciate fully the significance of this language it is necessary to review the Court's earlier holding in *Gray*. There an Ohio-manufactured safety valve had been incorporated into a water heater in Pennsylvania prior to the water heater being sold to a consumer in Illinois. The defendant-Ohio manufacturer had not carried on any other business in Illinois, either directly or indirectly. The Supreme Court held that a manufacturer engaged in interstate commerce which expects its products to be used in other states, can reasonably expect to be held amenable to the jurisdiction of these other states' courts. The Court, having distinguished the *Gray* situation from the one encountered in

*World-Wide*, leaves us to infer that *Gray's* precedential value remains undisturbed by the holding in *World-Wide*. Justice Brennan and Justice Marshall, in their dissenting opinions in *World-Wide*, give support to the inference that the precedential value of *Gray* remains undiminished. 444 U.S. at 306-307, 315, 62 L.Ed. 2d at 507-08, 513, 100 S.Ct. at 584, 569.

A review of lower court decisions following *World-Wide* supports our view that by selling its products to a *distributor* in New York, defendant-appellees could clearly expect that their products would be used in other states, and thus could reasonably expect to be subject to the jurisdiction of the courts of those states. "We note at this juncture that so far as the issues in this case are concerned there is no difference between an alien corporation and that of one of our sister states." *Shon v. District Ct. In And For City, Etc.*, 199 Colo. 90, 92, 605 P. 2d 472, 474 (1979).

*Le Manufacture Francaise v. District Court*, --- Colo. ---, 620 P. 2d 1040 (1980), presents a fact situation very similar to ours. Michelin of France, a tire manufacturer, was sued in Colorado for injuries sustained by a couple when a tire manufactured by Michelin of France allegedly failed. Although the defendant-manufacturer in that case, similar to the case *sub judice*, had no manufacturing facilities outside of France, had no facilities of any kind in the United States and owned no property in this country, did not have an appointed agent for service of process, a bank account, or a telephone listing in the United States and did not engage in the advertising of its products in the United States, the court held that Colorado could assert jurisdiction over the French manufacturer without violating the due process clause. The court adopted language from *Gray, supra*, in support of its holding.

> [I]t is seldom that a manufacturer deals directly with consumers in other states. The fact that the benefit he derives from [their] laws is an indirect one, however, does not make [those laws] any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his products, to say that the use of such products in the ordinary course of commerce is sufficient contact with [such states] to justify a requirement that he defend [there]. [Citations omitted.]

--- Colo. at ---, 620 P. 2d at 1045. The court found the minimum contacts requirement espoused by the Supreme Court in *World-Wide* to be met under the facts of *Le Manufacture Francaise.* "A manufacturer may be found to have engaged in the requisite purposeful activity even when title and control of its products pass outside of the forum state to middle-men who eventually resell the products to consumers within the state." *Id.* The court also noted the difficulties plaintiffs would confront if the Colorado courts were found to be without jurisdiction and plaintiffs were forced to pursue the litigation in France.

*McCombs v. Cerco Rentals,* 622 S.W. 2d 822 (1981), supports an assertion of jurisdiction over CTC and Coronaverken by our state's courts. There the court decided "whether the due process clause of the Fourteenth Amendment of our Federal Constitution permits a Tennessee state court to exercise personal jurisdiction over a French manufacturer where its only connection with Tennessee is that one of its cranes entered this country through its wholly-owned subsidiary and was sold to an independent middleman which, while under contract to become the manufacturer's exclusive North American distributor, leased the crane to a Tennessee corporation for use in Tennessee, where damage occurred." 622 S.W. 2d at 824. The relevant facts are that defendant manufactured a crane in France. It shipped the crane to its distributor in New York. The distributor sold the crane to a North Carolina corporation. The North Carolina corporation leased the crane to a Tennessee corporation for use in Tennessee. While operating the crane in Tennessee plaintiff was injured as the result of an alleged defect in the crane. As in the case *sub judice,* the French manufacturer exported its products to this country for distribution throughout the United States. The record in that case, as here, did not reveal any evidence that the foreign defendant either intended or anticipated distribution to be limited to a particular state or states or attempted to so limit its distribution. The court concluded that the defendant had "indirectly availed itself of the laws of Tennessee by injecting its product into the stream of national commerce" and could therefore "reasonably anticipate being haled into a Tennessee court to answer to a product liability claim." 622 S.W. 2d at 827.

In *Svendsen, supra,* an Iowa state court held that personal jurisdiction could be exercised by the Iowa courts over a Missouri

pool table manufacturer who placed its allegedly defective product into the stream of commerce by selling it to a dealer in Nebraska who ultimately sold it to the bowling alley in Iowa where plaintiff was injured when the pool table fell on her foot. That court stated that "when a manufacturer voluntarily places his product in the stream of commerce, the constitutional requirement of minimum contacts will be satisfied in all states where the manufacturer can foresee that the product will be marketed." 304 N.W. 2d at 431.

Cases involving parts manufacturers whose product entered the forum state with which it had no direct contacts by way of the parts' incorporation into a finished product also support the exercise of jurisdiction over defendant-appellees in the present case. *See Ford Motor Co. v. Atwood Vacuum Machine Co., supra, State ex rel. Hydraulic Servocontrols v. Dale,* 294 Or. 381, 657 P. 2d 211 (1983). Other cases have held that a foreign manufacturer cannot shield itself from liability for injuries caused by its defective product in the forum state with which it has no direct contacts simply by funnelling its products through a domesticated, wholly owned, but completely separate and uncontrolled subsidiary, or through an exclusive agent or distributor. *Mac Millan-Bloedel v. Canada,* 391 So. 2d 749 (Fla. Dist. Ct. App. 1980); *Coons v. Honda Motor Co., Ltd., of Japan,* 176 N.J. Super. 575, 424 A. 2d 446 (1980).

The Supreme Court in *World-Wide* reaffirmed the proposition that "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." 444 U.S. at 291, 62 L.Ed. 2d at 498, 100 S.Ct. at 564. But the court also pointed out that

> [T]he burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute [citation omitted]; the plaintiff's interest in obtaining convenient and effective relief [citation omitted], at least when that interest is not adequately protected by the plaintiff's power to choose the forum [citation omitted]; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies, [citation omitted].

*Id.* at 292, 62 L.Ed. 2d at 498, 100 S.Ct. at 564-65.

In this case, it is alleged that the cause of action arose directly from the intended use of defendant-appellees' product in North Carolina, by which a North Carolina resident was injured. The tort occurred in North Carolina, the majority of the prospective witnesses are presumably in North Carolina, and North Carolina substantive law is applicable. Taking into consideration all of the above factors, and in light of the fact that defendant-appellees purposefully injected their product into the stream of commerce without any indication that it desired to limit the area of distribution of its product so as to exclude North Carolina, we hold that the courts of North Carolina may lawfully assert personal jurisdiction over defendant-appellees CTC and Coronaverken.

Reversed and remanded.

Judges WHICHARD and JOHNSON concur.