**GODWIN AIRCRAFT, INC.,**
**Plaintiff–Appellee,**

v.

**Ray R. HOUSTON d/b/a Washington County Air Service, Defendant–Appellant.**

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Nov. 20, 1992.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 22, 1993.

Michael Richards, Memphis, for plaintiff-appellee.

Patrick W. McKee, Atlanta, GA, A. Russell Larson, Jackson, for defendant-appellant.

CRAWFORD, Judge.

This case involves the purchase of an airplane by plaintiff-appellee, Godwin Aircraft, Inc., (hereinafter Godwin) from a Georgia resident, Ray R. Houston, d/b/a Washington County Air Service (hereinafter Houston).

Godwin filed a complaint against Houston in the Chancery Court of Shelby County, Tennessee. The complaint seeks damages allegedly caused by defendant's fraud, misrepresentation and breach of contract in the purchase of an aircraft. Defendant first filed a motion to dismiss for lack of personal jurisdiction, which was denied. Defendant's answer, in addition to relying on lack of jurisdiction, joined issue in the material allegations of the complaint.

The plane was sold at a national auction held in Oklahoma City, Oklahoma on June 19, 20, and 21, 1991, under the terms of a contract between Oklahoma Aircraft Dealers Association and the defendant-appellant, Ray Houston.

The auction catalog set out the terms of the auction which includes the following:

> The aircraft listed in this catalog have been submitted by the owner. In no way is the Oklahoma Aircraft Dealers Association responsible for their accuracy. Understand you buy "as is" "where is". Inspect aircraft and log books prior to bidding. If you are high bidder and bid is accepted by the owner, aircraft is considered *sold*! (emphasis in original).

The procedure used at the auction was for the individual planes to be rolled out for potential bidders to inspect and then the bidding begins. The potential bidder has the opportunity to inspect the log book for each particular aircraft. In the instant case, Houston not only was the owner of the subject aircraft, but was also an authorized inspector for the Federal Aviation Administration (FAA). On December 22, 1989, Houston, as the authorized inspector, made the following certification in the aircraft log book. "I CERTIFY THAT THIS AIRCRAFT HAS BEEN INSPECTED IN ACCORDANCE WITH THE ANNUAL INSPECTION AND FOUND TO BE IN AN AIRWORTHY CONDITION. I.A. 255921619 R. Ray Houston." The certification on December 22, 1989, was made when the aircraft had 2,601 hours, and the aircraft at the time of the sale had 2,728.8 hours. Godwin became the successful bidder and Houston provided clear title to the aircraft and the bill of sale to Godwin.

Houston testified that an electronic transfer of funds from Godwin's bank to Houston's account in Georgia was arranged at the time the bill of sale was passed in Oklahoma City. Godwin testified that no funds were wired at that time, but were ultimately wired from Boatman's Bank in Memphis to Houston's bank in Georgia. Houston flew the plane from Oklahoma City to the General Dewitt Spain Airport on Second Street in Memphis. Houston testified that he offered to fly the plane to Memphis as a convenience to himself in order to save air fare on his return flight to Georgia. Godwin and several wit-

nesses in his behalf testified that Houston insisted upon flying the aircraft to Memphis himself. The plane was left on Godwin's ramp at the airport.

A few days after the plane arrived at the Spain airport, the plane was flown to Jonesboro, Arkansas, for an examination by a prospective purchaser, a company owned by Mark Haggenmacher. Haggenmacher had the plane inspected by Dale Sharp, an A & P Mechanic with 22 years experience. After a preliminary inspection by Sharp, the plane was returned to Godwin at the Spain airport. After the plane was returned, Godwin learned that Sharp's preliminary inspection indicated that several airworthiness directives (AD) issued by the FAA had not been complied with, such as inspection of turbo charges, inspection of exhaust system, inspection of fuel cells, inspection of hoses in the engine compartment, and inspection of the heater. In addition, the preliminary report also noted inoperable flaps.

After the plane was returned to Memphis, a more detailed inspection was made by two A & P mechanics, Steve Wallace and Glen Mitchell. Wallace testified that the inoperable flaps were caused because there was no flap motor and transmission in the airplane. There was also evidence of a disregard of an AD concerning cracks in the engine casing where repairs were attempted instead of required replacement. Wallace further testified that parts of the turbo charger and exhaust system were cracked and missing and exhaust gasses had scarred the left engine support beam which could cause the engine to fail. In his opinion, this scarring of the beam was a result of at least 200 hours of operation and that this condition would have been evident on inspection at the time of the Houston inspection 127 hours earlier as noted in the aircraft log. Wallace further testified about a bent elevator push rod and evidence that an attempt had been made to repair the push rod, both of which should have been evident upon an annual inspection. Wallace opined that at the time the aircraft was sold at auction it was not airworthy.

Glen Mitchell, an aircraft inspector and pilot testified that the bent elevator push rod could have caused loss of control of the aircraft. He likewise found the cause of the inoperable flaps to be the absence of a flap motor. Mitchell also testified concerning the disregard of the engine casing AD. He testified that the majority of all the parts on the exhaust and turbo were cracked and deteriorated beyond repair, and that the engine support beam was corroded and severely damaged which could cause a crash. He opined that damage to the support beam occurred over a 150 to 200 hour period and that this damage had to have been evident in an inspection 127 hours previous to the time he inspected it.

Alan Godwin, President of Godwin Aircraft, testified that he had 19 years experience in the aircraft business. He stated that although the auction was "as is—where is," this aircraft was represented as being in an airworthy condition by virtue of the annual inspection signed off by Houston himself. The only time Godwin saw the aircraft before the auction was when it was run through the auction block. He had time to inspect the log book and read the certification that the plane was airworthy. He testified that Houston insisted on flying the aircraft to Memphis, although Godwin had five extra pilots available who could have flown the plane. This testimony was corroborated by Mark Haggenmacher.

An expert for the United States Testing Company also testified concerning physical testing done to the engine support beam to determine the extent of the damage done and the period of time over which it had occurred. He reached the conclusion that the damage occurred over a long period of time and that his company could not replicate the corrosion by test in twelve cycles of 180 hours.

Houston's testimony did not specifically contradict the existence of the defects in the aircraft. He testified that mistakes do happen in aircraft logs, but he did not deny that the aircraft was defective and unairworthy. He is a pilot and aircraft inspector licensed by the FAA and was the owner

and operator of the subject aircraft. During the time that he owned the aircraft, he maintained the plane and fulfilled federal regulations regarding required inspections. As a licensed aircraft inspector, he conducted the required inspections and signed the plane's log indicating that the inspections had been completed. He flew the plane to Oklahoma City for the auction and listed it for sale. He further testified that the catalog made no express representation as to the condition of the aircraft, except that it contained language by which it was noted that the plane's auto pilot was inoperable, which fact was known to the buyer prior to the auction. He testified that he made no warranties, express or implied to anyone and he had no contact with the plaintiff until after the auction. Houston further testified that the plane was located at the airport in Oklahoma City for approximately three days prior to the auction and available for buyer inspection at any time. He stated that after the bid was made and accepted, the completion of the sales transfer took place while the parties were in Oklahoma. Houston noted in his testimony that Godwin's mechanics discovered the defects through visual inspection, which visual inspection could have been made by Godwin prior to making a bid on the aircraft. He further testified that with regard to his inspection prior to the auction which is recorded in the log book, he was the owner and sole operator of the plane and that he had not contemplated plans to sell the plane at that time. He indicated that the defects subsequently discovered could have occurred during the time period between his last inspection and the purchase at the auction.

After a bench trial, the chancellor awarded plaintiff compensatory damages in the amount of $41,171.88 and punitive damages in the amount of $10,375.00. Defendant has appealed, and the first issue for review is whether the chancellor erred in holding that the court has personal jurisdiction over the defendant.

The judgment recites the chancellor's basis for finding personal jurisdiction:

[T]hat this Court has personal jurisdiction over the Defendant based upon the fact that the number of defects in the aircraft which were known or should have been known to Defendant and based upon the testimony of Godwin and Haggenmacher that Defendant insisted upon flying the airplane to Memphis in order to conceal such defects....

Godwin contends that Houston is subject to the jurisdiction of the Shelby County Chancery Court and was properly served with process by virtue of T.C.A. § 20–2–214(a)(2) and (6) (Supp.1992) which provides:

(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

\*　　\*　　\*　　\*　　\*　　\*

(2) Any tortious act or omission within this state;

\*　　\*　　\*　　\*　　\*　　\*

(6) Any basis not inconsistent with the constitution of this state or of the United States;

\*　　\*　　\*　　\*　　\*　　\*

Houston contends that the entire transaction took place in Oklahoma, that he is a resident of the State of Georgia and had no contact whatsoever with the State of Tennessee.

Godwin asserts that the trial court correctly held that Houston was within the jurisdiction of the court based on the holding of our Supreme Court in *Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240 (Tenn.1972). Jasper's complaint alleged that McCollum placed an ad in the trade paper known as *Trade–A–Plane* for the sale of a helicopter. The trade paper was a Tennessee publication which was mailed to all parts of the world. The ad described the helicopter and showed the seller as McCollum in Danville, Illinois. In response to the advertisement, officers of Jasper called McCollum in Danville, Illinois, discussed the aircraft, consummated a contract for the purchase, and then went to

Danville to pick up the aircraft. The complaint stated that after taking delivery, "it was discovered that the said aircraft had been falsely advertised and falsely misrepresented; that the entries in the aircraft log which is required under Federal Aviation Authorities to be kept had fraudulent endorsements and improper entries." *Id.* at 241. The FAA grounded the aircraft because of various defects and it was then later discovered that the aircraft itself did not have FAA approval for use. The complaint also alleged that the plaintiff had to spend over $6,000 to make the aircraft airworthy and lost its services for many days while the repair work was being done. Plaintiffs sought damages for tortious misrepresentations in addition to breaches of warranties. The trial judge sustained the defendant's motion to dismiss and on appeal to the Supreme Court, plaintiff based his appeal solely upon the tort theory of misrepresentation. The Court noted that in *Hanvy v. Crosman Arms Co., Inc.,* 225 Tenn. 262, 466 S.W.2d 214, 216 (1971), the Supreme Court held that the legislature in enacting the section of the Long Arm Statute that provides jurisdiction over nonresidents for an action arising from tortious acts or omissions within the state, intended to include allegedly negligent conduct which occurs without the state but results in tortious injury occurring within the state. The court said:

> [I]f all the tortious acts in a case were committed outside the State of Tennessee, as in *Hanvy,* but the resulting tortious injury was sustained within the State, then the tortious acts and the injury are inseparable and jurisdiction lies in Tennessee. *Hanvy v. Crosman Arms Company, Inc., supra,* at page 216 [466 S.W.2d 214]; *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961); *Bowen v. Bateman,* 76 Wash.2d 567, 458 P.2d 269, 273–274 (1969); *Myers v. United States Automobile Club, Inc.,* 281 F.Supp. 48 (E.D.Tenn.1968).

497 S.W.2d at 244.

The Court then stated:

> The plaintiff's complaint makes the allegation that an out-of-state defendant misrepresented the truth concerning a certain chattel. The complaint further states that the plaintiff relied on the alleged misrepresentations and as a result thereof suffered economic loss and injury in the State of Tennessee. These allegations and statements, taken together, are sufficient to state a cause of action for misrepresentation. If there is a misrepresentation, whether it comes within the provisions of Restatement of Torts 2d, § 402B, Restatement of Torts 2d, § 552 (Tent.Draft), or the common law action of fraud and deceit, then the injury from that misrepresentation occurred in Tennessee. Accordingly, under our decision in *Hanvy v. Crosman Arms Company, Inc., supra,* the action lies in Tennessee, and our Long Arm Statute confers jurisdiction upon the Tennessee courts over the non-resident defendant.

497 S.W.2d at 244–245.

■ Although the Court in *Jasper* does state that the tortious acts do not need to take place in Tennessee, it is clear that the defendants in both *Hanvy* and in *Jasper* did actually avail themselves of the privilege of acting in a commercial manner in Tennessee. In *Jasper,* the defendant placed an ad in a Tennessee magazine directly soliciting customers for its aircraft. Similarly, in *Hanvy,* a New York manufacturer placed the product in question into the channels of national commerce and specifically directed it to Tennessee. In *McCombs v. Cerco Rentals,* 622 S.W.2d 822 (Tenn.App.1981), the Eastern Section of this Court noted that the criteria for determining the outer limits of personal jurisdiction based on a single act established in *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir.1968) apply also to cases based on T.C.A. § 20–2–214(a)(2), tortious act or omission. The *Mohasco* criteria are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences

caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. 622 S.W.2d at 825. With the addition of T.C.A. § 20–2–214(a)(6) it is apparent that the legislature intended that the scope of the Long Arm Statute "fully extends to the bounds imposed by the due process clause of the Fourteenth Amendment of the United States Constitution." *Id.* at 824.

■ In the case at bar, the trial court specifically found that Houston made fraudulent misrepresentations in Oklahoma and purposely acted to continue those misrepresentations by insisting that he fly the airplane to Memphis. Thus, if the chancellor's findings are correct, Houston's misrepresentations were continuous into this state, and satisfy the requirements of *Mohasco.*

■ The proof established that the flying of the aircraft would have revealed many of the defects discovered by Godwin and his employee after the plane arrived in Memphis. We recognize, of course, that Houston contends that he did not insist upon flying the plane to Memphis, but merely wanted transportation. Godwin and another witness testified to the contrary. When the issues in a case turn upon the truthfulness of witnesses the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide that issue. The findings in this regard will be given great weight on appeal. *Town of Alamo v. Forcum–James Co.,* 205 Tenn. 478, 327 S.W.2d 47 (1959).

Based on the record before us, the trial court correctly held that the court had jurisdiction over defendant Houston.

■ The next issue for review is whether the trial court erred in finding that the defendant made fraudulent misrepresentations in the sale of the aircraft.

The proof established that Houston certified in the log book approximately *six* months prior to the sale to Godwin that the aircraft was airworthy. From that time until the time of the sale, the aircraft was flown approximately 127 hours. Godwin introduced expert opinion proof that some of the major defects discovered after the sale were in existence at the time of Houston's log book certification. Witnesses opined that the aircraft was not airworthy at the time so certified by Houston.

In *Haynes v. Cumberland Builders,* 546 S.W.2d 228 (Tenn.App.1976), the Middle Section of this Court, speaking through Judge Drowota now Justice Drowota of our Supreme Court, outlined the elements of the common law action of fraud and deceit:

When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. *Rose v. Foutch,* 4 Tenn.App. 495 (1926). The representation must have been made with knowledge of its falsity and with a fraudulent intent. *Shwab v. Walters,* 147 Tenn. 638, 251 S.W. 42 (1922); *Vela v. Beard,* 59 Tenn.App. 544, 442 S.W.2d 644 (1968). The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury. *Whitson v. Gray,* 40 Tenn. 441 (1859); *Dozier v. Hawthorne Development Co.,* 37 Tenn.App. 279, 262 S.W.2d 705 (1953).

In commercial transactions the law has recognized a less stringent standard of liability for fraudulent misrepresentations than the common law action for deceit. One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Jasper Aviation, Inc. v. McCollum Aviation, Inc.,* 497 S.W.2d 240 (Tenn.1972); *Hunt v. Walker,* 483 S.W.2d 732 (Tenn.App.1971). This standard of liability substitutes a

reasonable care standard for the common law scienter requirement. In other words, in business transactions, a defendant can be held liable for negligent misrepresentations.

546 S.W.2d at 232.

The trial court in the instant case found that Houston made misrepresentations concerning the airworthiness of the aircraft in question and clearly such misrepresentations are material. *See Haverlah v. Memphis Aviation, Inc.,* 674 S.W.2d 297, 304 (Tenn.App.1984).

The findings of the trial court come to us with a presumption of correctness and from our examination of this record, we cannot say that the evidence preponderates against the trial court's finding that defendant made material misrepresentations in the sale of this aircraft. *See* Rule 13(d), T.R.A.P.

The next issue for review is whether the "as is, where is" disclaimer, and Godwin's opportunity to inspect the aircraft prior to the sale, should relieve the seller of liability for the misrepresentation that the aircraft was airworthy.

In the case at bar, the log book certified by Houston declared the aircraft to be in airworthy condition. The evidence supports the trial court's findings that the certification was untrue, and that Houston intended to keep this information from Godwin until after delivery of the aircraft in Memphis. The record also contains proof that Godwin specifically inspected the log book to determine whether the aircraft was airworthy and that he relied upon the certification made to that effect. There is also proof that several of the more serious defects would not have been revealed unless the aircraft had been partially dismantled.

Houston further argues that the "as is, where is" disclaimer absolves him from liability. We must respectfully disagree. In the case at bar, the trial court found, and we have agreed, that the evidence does not preponderate against the finding that specific misrepresentations were made which were relied upon by the purchaser. In *Morris v. Mack's Used Cars,* 824 S.W.2d 538 (Tenn.1992), our Su-

preme Court held that disclaimers permitted by the Uniform Commercial Code do not constitute a defense under the Tennessee Consumer Protection Act. The court noted that the Act created a separate and distinct cause of action for unfair or deceptive acts or practices. While we do not have a Consumer Protection Act case here, we do have a tortious misrepresentation case, which likewise is a distinct and separate cause of action from breach of warranty cases under the Uniform Commercial Code. In the case at bar, the action for tortious misrepresentation is analogous to an action for deceptive trade practices under the Consumer Protection Act.

The trial court found that defendant Houston made material misrepresentation and that he willfully continued these representations until delivery of the aircraft in Memphis. The evidence does not preponderate against the trial court's findings in this regard.

The judgment of the trial court is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.