IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-288

Filed 31 December 2024

Wake County, No. 22 CVS 006824-910

CAMERON VLASSIS, Plaintiff,

v.

NISSAN NORTH AMERICA, INC., et al., Defendants.

Appeal by plaintiff from order entered 18 December 2023 by Judge Vinston M. Rozier, Jr., in Wake County Superior Court. Heard in the Court of Appeals 25 September 2024.

> *Milberg Coleman Bryson Phillips Grossman PLLC, by Mark R. Sigmon, Abrams & Abrams, P.A., by Noah B. Abrams and Melissa N. Abrams, and Garrett, Walker, Aycoth & Altamura, LLP, by Matthew F. Altamura, for plaintiff-appellant.*

> *Womble Bond Dickinson (US) LLP, by Matthew F. Tilley, and Faegre Drinker Biddle & Reath, LLP, by Tracy Gregar Ferak, Elizabeth C. Christen, and Lisa J. Perunovich, pro hac vice, for defendant-appellee Adient US LLC.*

> *No brief filed for other defendants-appellees.*

ZACHARY, Judge.

Plaintiff Cameron Vlassis appeals from the trial court's order granting the motion to dismiss of Defendants Adient Inc., Adient plc, Adient US LLC, Adient US Enterprises Limited Partnership, Adient Systems Engineering LLC, Adient

Enterprises US LLC, Adient Clanton Inc., and Adient Eldon Inc.[1] for lack of personal jurisdiction. After careful review, the trial court's findings of fact are insufficient to enable meaningful appellate review of the complex jurisdictional issues presented. Consequently, we affirm in part, vacate in part, and remand for additional findings of fact.

## I.    Background

On 6 August 2019, Plaintiff was the front passenger in a 2017 Nissan Altima traveling in Wake County, North Carolina, when it collided with another vehicle. According to Plaintiff, the retractor for the Altima's right rear seat belt suddenly failed and broke apart during the collision, sending the occupant of the rear passenger's side seat hurtling into the back of Plaintiff's seat. Plaintiff's seat back collapsed forward, causing Plaintiff to suffer a catastrophic spinal injury resulting in paraplegia.

The procedural facts of the ensuing litigation are not disputed. On 3 June 2022, Plaintiff, a Texas resident, filed a complaint in Wake County Superior Court against several defendants, raising various claims arising out of the collision. On 21 July 2022, Plaintiff filed an amended complaint, adding the Adient Defendants as co-defendants. Plaintiff alleged that the Adient Defendants "derive profit from designing, manufacturing, assembling, inspecting, testing, warning, advertising,

---

[1] We refer to this group of defendants collectively as "the Adient Defendants." Where appropriate, we refer to Defendant Adient US LLC individually as "Adient."

promoting, and supplying driver and passenger seats and components thereof for installation and use in motor vehicles for sale within the State of North Carolina," including the Altima involved in Plaintiff's collision.

On 16 August 2022, Plaintiff served Adient[2] through its registered agent in Michigan. On 25 August 2022, Adient registered to transact business in North Carolina. Adient identified a registered agent and registered office address in Raleigh. Plaintiff eventually served Adient again, this time through service upon its North Carolina registered agent, on 22 May 2023.

On 29 September 2022, the Adient Defendants filed a motion to dismiss for lack of personal jurisdiction together with a motion for a protective order to stay merits discovery. On 26 October 2022, Plaintiff served the Adient Defendants with discovery requests related to personal jurisdiction, comprising special interrogatories, requests for production, and requests for admission.

With the consent of all the parties, on 14 November 2022, Plaintiff filed and served upon all Defendants a second amended complaint. The Adient Defendants again moved to dismiss on 2 December 2022. On 23 December 2022, the Adient Defendants served Plaintiff with their responses to the jurisdictional discovery requests.

On 20 February 2023, Plaintiff filed a motion to compel further responses to

---

[2] The record on appeal contains affidavits of service upon Adient and Adient plc filed on 25 August 2022. At no point did any of the other Adient Defendants contend that service was inadequate.

the jurisdictional discovery, which came on for hearing in Wake County Superior Court on 18 May 2023. On 10 July 2023, the trial court entered an order granting Plaintiff's motion in part, and denying it in part. In conformance with this order, the Adient Defendants provided supplemental responses to the jurisdictional discovery on 8 September 2023.

On 3 October 2023, the Adient Defendants filed a memorandum in support of their motion to dismiss, and Plaintiff filed his memorandum in opposition to the motion that same day. The motion to dismiss came on for hearing on 5 October 2023. At the hearing, the trial court heard arguments of counsel and received documentary exhibits.

On 18 December 2023, the trial court entered an order granting the Adient Defendants' motion to dismiss. In its order, the court made the following pertinent findings of fact:

> 4. The Subject Vehicle was manufactured by Nissan at its manufacturing facility in Smyrna, Tennessee. Plaintiff has alleged that the Adient Defendants, along with other Defendants "designed, manufactured, assembled, tested, inspected, advertised, sold, and/or supplied" the "front passenger seat and its components and subcomponents thereof" for the Subject Vehicle.
>
> 5. The Adient Defendants submitted two affidavits with their Motion to Dismiss Plaintiff's Second Amended Complaint, filed on December 2, 2022, detailing the role of the Adient Defendants in connection with model year 2017 Nissan Altima vehicles and the Subject Vehicle. The only Adient Defendant that potentially had any involvement with the front passenger seat in the Subject Vehicle is

Adient US LLC. The other Adient Defendants had no involvement whatsoever.

6. Adient US LLC is organized under the laws of the State of Michigan, and its principal place of business is in Michigan. Adient US LLC has never had a business location in North Carolina.

7. Adient US LLC's limited involvement with model year 2017 Nissan Altima vehicles built at Nissan's Smyrna, Tennessee plant was as follows: Adient US LLC's Pulaski, Tennessee plant supplied foam for the front passenger seats. Using this foam and other component parts supplied by non-Adient entities, Adient US LLC's Murfreesboro, Tennessee plant assembled and supplied all front passenger seats to Nissan for its model year 2017 Nissan Altima vehicles that were built at Nissan's Smyrna, Tennessee plant. The assembled seats were delivered directly from Adient US LLC's Murfreesboro, Tennessee plant to Nissan's Smyrna, Tennessee plant, without leaving the State of Tennessee. Once the seats were delivered to Nissan's plant in Smyrna, Tennessee, Adient US LLC had no further involvement with, or control over, the seats or vehicles and their distribution. No other plants or locations supplied model year 2017 Nissan Altima front passenger seats to Nissan's Smyrna[,] Tennessee plant, and Adient US LLC's Murfreesboro, Tennessee plant only supplied model year 2017 Nissan Altima seats to Nissan's Smyrna[,] Tennessee plant and to no other Nissan plant or location.

8. Adient US LLC's business model involves selling automotive seats and related component parts through OEM[3] automobile manufacturers who distribute Adient's automotive seating products to the end users through their customers' automotive dealership networks.

. . . .

---

[3] "OEM" is an abbreviation for "original equipment manufacturer" and in this case Nissan is the OEM.

12. Defendant Adient US LLC registered to transact the business of "Automotive Seating Manufacturing" in the State of North Carolina on August 25, 2022, over three years after the subject incident, and . . . on May 22, 2023[,] Plaintiff served Adient US LLC with process in this action through its North Carolina registered agent, after having previously served Adient US LLC through its registered agent in Michigan on August 16, 2022.

The trial court then made several conclusions relating to various bases for personal jurisdiction. The court first reasoned that Adient's registration to transact business in North Carolina and service through its registered agent was "not in and of itself sufficient to create general personal jurisdiction over Adient US LLC in North Carolina, nor d[id] it create specific personal jurisdiction over Adient US LLC in North Carolina in this action." The trial court also explained that "[n]one of the Adient Defendants are 'at home' in the State of North Carolina such that they would be subject to general personal jurisdiction in North Carolina." Furthermore, the court determined that "[n]one of the Adient Defendants have sufficient contact with the State of North Carolina such that they would be subject to specific personal jurisdiction in North Carolina" because "[t]he controversy in this case does not arise out of or relate to any activities of the Adient Defendants in North Carolina." Consequently, the trial court concluded that "Plaintiff has not established general or specific personal jurisdiction over any Adient Defendant[,]" and granted the Adient Defendants' motion to dismiss.

Plaintiff timely filed notice of appeal.

## II.    Appellate Jurisdiction

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). In that the order from which Plaintiff appeals granted the Adient Defendants' motion to dismiss but did "not dispose of the case" as to the other defendants, Plaintiff's appeal is interlocutory. *Id.*

However, "[a]ny interested party has the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.]" N.C. Gen. Stat. § 1-277(b) (2023). "Indeed, motions to dismiss for lack of personal jurisdiction affect a substantial right and are immediately appealable." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 257–58, 625 S.E.2d 894, 898 (2006). Accordingly, Plaintiff has the right of immediate appeal from the trial court's interlocutory order, and this appeal is properly before us.

## III.    Discussion

Plaintiff argues that the trial court erred by granting the Adient Defendants' motion to dismiss for lack of personal jurisdiction. As a preliminary matter, we note that Plaintiff clarified at oral argument before this Court that he only challenges the

trial court's order with respect to Adient, and not all of the Adient Defendants.[4] Accordingly, the trial court's order remains undisturbed as to the other Adient Defendants.

Plaintiff raises two main arguments on appeal in support of his contention. First, Plaintiff maintains that Adient "consented to suit [in North Carolina] by obtaining a certificate of authority to transact business and appointing a registered agent who was served." Second, Plaintiff contends that Adient had "sufficient minimum contacts [with North Carolina] such that the exercise of specific personal jurisdiction does not offend due process." For the reasons that follow, we are unable to effectively review the trial court's order.

## A. Standard of Review

"When the parties have submitted affidavits and other documentary evidence, a trial court reviewing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) must determine whether the plaintiff has established that jurisdiction exists by a preponderance of the evidence." *Schaeffer v. SingleCare Holdings, LLC*, 384 N.C. 102, 106, 884 S.E.2d 698, 703–04 (2023) (citation omitted). "If the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Banc of*

---

[4] In his brief on appeal, Plaintiff explains that Adient is "the entity that registered to do business in North Carolina, manufactured the seat at issue, and had the most contacts with North Carolina."

*Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (cleaned up).

On appeal from a trial court's Rule 12(b)(2) order, an appellate court "consider[s] whether the trial court's determination regarding personal jurisdiction is supported by competent evidence in the record." *Schaeffer*, 384 N.C. at 106, 884 S.E.2d at 704 (citation omitted). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011) (citation omitted), *disc. review denied*, 365 N.C. 574, 724 S.E.2d 529 (2012).

"We review de novo the issue of whether the trial court's findings of fact support its conclusion[s] of law . . . ." *Id.* (italics omitted). We also conduct de novo review "when the pertinent inquiry on appeal is based on a question of law[.]" *State ex rel. Stein v. E. I. DuPont de Nemours & Co.*, 382 N.C. 549, 556, 879 S.E.2d 537, 543 (2022) (citation omitted).

**B. Applicable Legal Principles**

"It is well established that whether a nonresident defendant is subject to personal jurisdiction in this State's courts involves a two-step analysis." *Schaeffer*, 384 N.C. at 106, 884 S.E.2d at 704 (cleaned up). "First, North Carolina's long-arm statute, [N.C. Gen. Stat.] § 1-75.4, must authorize a court to exercise jurisdiction. This statute makes available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Id.* (cleaned up). "[T]he second step in

the inquiry addresses the determinative issue: whether the Fourteenth Amendment's Due Process Clause permits a state court to exercise jurisdiction over a defendant." *Id.*

At oral argument before this Court, Adient confirmed that it does not raise any first-step argument under the long-arm statute independent from the due-process analysis of the second step.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 209 L. Ed. 2d 225, 233 (2021); U.S. Const. amend. XIV, § 1. "Due process permits a state's courts to exercise jurisdiction over an out-of-state defendant when the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Schaeffer*, 384 N.C. at 106–07, 884 S.E.2d at 704 (cleaned up); *accord Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945). "Minimum contacts are established through some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schaeffer*, 384 N.C. at 107, 884 S.E.2d at 704 (cleaned up).

In its explication of this formulation, the United States Supreme Court "has long focused on the nature and extent of the defendant's relationship to the forum State. That focus led to [the Court] recognizing two kinds of personal jurisdiction:

general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford*, 592 U.S. at 358, 209 L. Ed. 2d at 233 (cleaned up).

A state court may exercise general jurisdiction—which "extends to any and all claims brought against a defendant"—only in cases where "a defendant is essentially at home" in the forum state. *Id.* (cleaned up); *see also Schaeffer*, 384 N.C. at 107, 884 S.E.2d at 704 ("General jurisdiction requires that a defendant's affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." (cleaned up)). Paradigmatically, this means that "an individual is subject to general jurisdiction in her place of domicile" and a corporation is subject to general jurisdiction in "its place of incorporation and principal place of business." *Ford*, 592 U.S. at 358–59, 209 L. Ed. 2d at 233.

As Plaintiff does not contend that this case implicates this traditional form of general jurisdiction,[5] we proceed to discuss specific jurisdiction.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed

---

[5] Adient contends that, by explicitly stating during the 18 May 2023 hearing on Plaintiff's motion to compel that he is "not alleging general jurisdiction[,]" Plaintiff has waived appellate review of his consent-by-registration argument because the consent-by-registration doctrine has been described as a form of general jurisdiction. *See Chavez v. Bridgestone Ams. Tire Operations, LLC*, 503 P.3d 332, 341 (N.M. 2021) ("Consent by registration provides a basis for general personal jurisdiction."). Because of our disposition of this appeal, we need not address the merits of this waiver argument. Nevertheless, we note that Plaintiff has consistently argued for Adient's consent by registration at all stages of the present case following Adient's registration in North Carolina, contended that Adient "erroneously conflate[d]" consent-by-registration with general jurisdiction, and only conceded below that the trial court could not exercise general jurisdiction over the Adient Defendants on an "at home" or "principal place of business" basis.

for this kind of jurisdiction often go by the name 'purposeful availment.' " *Id.* at 359, 209 L. Ed. 2d at 233–34 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542 (1985)). "The defendant . . . must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* at 359, 209 L. Ed. 2d at 234 (cleaned up). These minimum contacts "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (cleaned up).

"Yet even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims . . . must arise out of or relate to the defendant's contacts with the forum." *Id.* (cleaned up). "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 359–60, 209 L. Ed. 2d at 234 (cleaned up).

"These rules derive from and reflect two sets of values—treating defendants fairly and protecting interstate federalism." *Id.* at 360, 209 L. Ed. 2d at 234 (cleaned up). The United States Supreme Court has explained that specific jurisdiction was founded "on an idea of reciprocity between a defendant and a State: When (but only when) a company exercises the privilege of conducting activities within a state—thus

enjoying the benefits and protection of its laws—the State may hold the company to account for related misconduct." *Id.* (cleaned up). In this way, specific jurisdiction also "provides defendants with fair warning—knowledge that a particular activity may subject it to the jurisdiction of a foreign sovereign. A defendant can thus structure its primary conduct to lessen or avoid exposure to a given State's courts." *Id.* (cleaned up).

Finally, the United States Supreme Court has also "considered alongside defendants' interests those of the States in relation to each other. One State's sovereign power to try a suit . . . may prevent sister States from exercising their like authority." *Id.* at 360, 209 L. Ed. 2d at 234–35 (cleaned up). "The law of specific jurisdiction thus seeks to ensure that States with little legitimate interest in a suit do not encroach on States more affected by the controversy." *Id.* at 360, 209 L. Ed. 2d at 235 (cleaned up).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Schaeffer*, 384 N.C. at 107, 884 S.E.2d at 704 (quoting *Burger King*, 471 U.S. at 476, 85 L. Ed. 2d at 543). These factors include:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the

several States in furthering fundamental substantive
social policies.

*Id.* at 107, 884 S.E.2d at 704–05 (cleaned up).

## C. Discussion

Plaintiff argues on appeal that (1) Adient consented to suit by obtaining a certificate of authority to transact business in North Carolina and appointing a registered agent in this state, whom Plaintiff subsequently served; and (2) Adient had sufficient minimum contacts with North Carolina such that the trial court's exercise of specific jurisdiction would not offend due process.

However, in that the court did not make sufficient findings of fact to support its conclusion of law that Plaintiff has not established specific jurisdiction, we cannot effectively review the merits of Plaintiff's appeal. Accordingly, we must vacate and remand the trial court's order for further proceedings on the specific jurisdiction issue. As such, we need not address Plaintiff's argument regarding consent jurisdiction.

### 1. Stream of Commerce

In his complaint, in his voluminous opposition to the Adient Defendants' motion to dismiss, and during the hearing on the motion, Plaintiff consistently argued, *inter alia*, that the trial court could exercise specific jurisdiction in this case because Adient "purposefully availed itself of the privilege of North Carolina's laws" by "knowingly serv[ing] the North Carolina market for automotive seating products."

This is known as the "stream of commerce" theory of specific jurisdiction. We begin our analysis with an overview of this doctrine.

The stream-of-commerce theory is a common method of analyzing whether a state's courts would offend traditional notions of fair play and substantial justice through the exercise of personal jurisdiction over a non-resident defendant in products-liability cases such as the one before us. *See, e.g.*, *Cambridge Homes of N.C., Ltd. P'ship v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 417, 670 S.E.2d 290, 298 (2008) ("The stream of commerce theory applies to products liability cases such as this one."). "Minimum contacts can be found when the out-of-state defendant injects products into the 'stream of commerce' with the expectation that the products will reach the forum state." *Carswell Distrib. Co. v. U.S.A.'s Wild Thing, Inc.*, 122 N.C. App. 105, 107, 468 S.E.2d 566, 568 (1996).

In *World-Wide Volkswagen Corp. v. Woodson*, a leading stream-of-commerce case, the United States Supreme Court explained that

> if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly or indirectly*, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

444 U.S. 286, 297, 62 L. Ed. 2d 490, 501–02 (1980) (emphasis added).

Although the plaintiff had contended that it was arguably foreseeable that the defendant's product, sold elsewhere, could reach the forum state, the *World-Wide*

*Volkswagen* Court observed that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295, 62 L. Ed. 2d at 500 (cleaned up). However, the Court cabined this statement with an important reminder:

> This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 297, 62 L. Ed. 2d at 501.

In *Bush v. BASF Wyandotte Corp.*, this Court surveyed post-*World-Wide Volkswagen* jurisprudence and cited approvingly the following explanation for why an indirect relationship between a defendant and a forum state may provide the requisite minimum contacts to satisfy due process:

> It is seldom that a manufacturer deals directly with consumers in other states. The fact that the benefit he derives from their laws is an indirect one, however, does not make those laws any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his products, to say that the use of such products in the ordinary course of commerce is sufficient contact with such states to justify a requirement that he defend there.

64 N.C. App. 41, 48, 306 S.E.2d 562, 567 (1983) (cleaned up).

Thus, this Court in *Bush* observed that a forum state may appropriately exercise specific jurisdiction in "[c]ases involving parts manufacturers whose product

entered the forum state with which it had no direct contacts by way of the parts' incorporation into a finished product[.]" *Id.* at 50, 306 S.E.2d at 568; *see also Cox v. Hozelock, Ltd.*, 105 N.C. App. 52, 58, 411 S.E.2d 640, 644 ("[T]he sole act of a manufacturer's intentional injection of his product into the stream of commerce provides sufficient grounds for a forum state's exercise of personal jurisdiction over the foreign manufacturer defendant."), *disc. review denied*, 331 N.C. 116, 414 S.E.2d 752, *cert. denied*, 506 U.S. 824, 121 L. Ed. 2d 42 (1992).

Later, a fractured United States Supreme Court articulated two different visions of the stream-of-commerce test. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 94 L. Ed. 2d 92 (1987) (plurality). In the lead opinion in *Asahi*, but writing for a plurality of only four Justices, Justice O'Connor stated:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*Id.* at 112, 94 L. Ed. 2d at 104 (O'Connor, J., plurality opinion). This formulation of the doctrine has come to be known as "stream of commerce plus." *Brown v. Meter*, 199

N.C. App. 50, 60, 681 S.E.2d 382, 390 (2009) (cleaned up), *appeal dismissed and disc. review denied*, 364 N.C. 128, 695 S.E.2d 756 (2010), *rev'd sub nom. Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 180 L. Ed. 2d 796 (2011).

Writing for another group of four Justices in *Asahi*, Justice Brennan argued that Justice O'Connor's version of the test was "a marked retreat from the analysis in *World-Wide Volkswagen*[.]" 480 U.S. at 118, 94 L. Ed. 2d at 108 (Brennan, J., concurring). Instead, Justice Brennan framed the stream-of-commerce theory thusly:

> A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.* at 117, 94 L. Ed. 2d at 107.

Notwithstanding these disparate visions of the stream-of-commerce theory from the plurality opinions of the United States Supreme Court, this Court subsequently held that "*Asahi* does not overrule previous cases that follow the stream of commerce theory, including *Bush v. BASF*." *Cox*, 105 N.C. App. at 57, 411 S.E.2d at 644 (citation omitted). With these principles and precedents in mind, we now turn to the trial court's order from which the instant appeal arises.

## 2. *The Trial Court's Findings of Fact*

In its order granting the Adient Defendants' motion to dismiss, the trial court

made several findings of fact regarding Adient's manufacture of the vehicle seat at issue. In particular, the court homed in on the solely Tennessee-based nature of Adient's involvement:

> The assembled seats were delivered directly from Adient US LLC's Murfreesboro, Tennessee plant to Nissan's Smyrna, Tennessee plant, without leaving the State of Tennessee. Once the seats were delivered to Nissan's plant in Smyrna, Tennessee, Adient US LLC had no further involvement with, or control over, the seats or vehicles and their distribution.

These findings address Adient's lack of a direct effort to service North Carolina and are certainly relevant to the issue of specific jurisdiction. However, as our precedents make clear, Adient's *direct* efforts are not dispositive. Adient's *indirect* efforts to service North Carolina through the stream of commerce could also form a sufficient basis for the trial court's exercise of specific jurisdiction.

Yet the trial court did not make any findings of fact concerning this basis for specific jurisdiction, despite Plaintiff's considerable focus on that argument throughout the case. This omission presents an obstacle to our appellate review. Indeed, we "cannot resolve the question on appeal" because "[i]t is a long-standing principle of appellate law that appellate courts cannot find facts." *LouEve, LLC v. Ramey*, 286 N.C. App. 263, 272, 880 S.E.2d 431, 437–38 (2022) (cleaned up).

It is within our limited purview to establish that competent evidence supports what findings of fact that the trial court did make. Moreover, Plaintiff does not challenge the court's findings, so we are thus bound by those findings on appeal. *See*

*Bell*, 216 N.C. App. at 543, 716 S.E.2d at 871.

However, we cannot say that the trial court's findings of fact sufficiently support its conclusion of law that Plaintiff has not established specific jurisdiction in the absence of any findings of fact relating to Plaintiff's stream-of-commerce argument. As it happens, the court's finding of fact 8—explaining that Adient's "business model involves selling automotive seats and related component parts through OEM automobile manufacturers who distribute Adient's automotive seating products to the end users through their customers' automotive dealership networks"—arguably better supports the *opposite* conclusion: that Adient injected its products into the stream of commerce, thereby supporting North Carolina courts' exercise of specific jurisdiction.

For instance, in *Cohen v. Continental Motors, Inc.*, this Court determined that the trial court erred by concluding that it did not have personal jurisdiction over an aircraft component manufacturer that "did not sell components to individual aircraft owners themselves, [but] actively maintained a business model that operated through independent distributors" including one in North Carolina. 279 N.C. App. 123, 139, 864 S.E.2d 816, 827 (2021), *disc. review denied*, 380 N.C. 682, 868 S.E.2d 859 (2022). Notably, the Delaware-based corporate defendant made nearly 3,000 sales to—and earned almost $4 million from—North Carolina-based consumers through its distributor in North Carolina. *Id.* at 125, 864 S.E.2d at 818. The defendant also worked with 14 North Carolina-based maintenance providers that paid subscription

fees for access to the defendant's "online technical library" for various manuals. *Id.* at 126, 864 S.E.2d at 819.

Plaintiff contends that the similar figures in the present case are even more favorable for showing purposeful availment than those in *Cohen*. Plaintiff alleges that 41,556 Nissan Altimas "equipped with front passenger seats manufactured by Adient, including the seat that injured [Plaintiff], were distributed for original sale in North Carolina through North Carolina dealerships." Further, based upon Adient's quoted price of $125.15 per seat, Plaintiff suggests that "Adient made more than $5,000,000 from distributions of the exact seat at issue into North Carolina."

On the other hand, this Court recently rejected a trial court's finding of personal jurisdiction over two foreign corporations that manufactured helicopters and their engines where neither defendant marketed, advertised, sold, delivered, or distributed their products in or to North Carolina. *See Bartlett v. Est. of Burke*, 285 N.C. App. 249, 265–66, 877 S.E.2d 432, 443–44 (2022), *appeal dismissed and disc. review denied*, ___ N.C. ___, 905 S.E.2d 213 (2024). The distinction between *Cohen* and *Bartlett* was based on the particular facts alleged in each case. For example, the *Bartlett* Court found a material difference between the websites provided by the defendants in each case: "Unlike the paid subscription service shown in *Cohen*," one of the *Bartlett* defendant's websites was "not shown to contain a commercial nature from paid subscriptions." *Id.* at 265, 877 S.E.2d at 443.

This level of factual scrutiny, as demonstrated by these representative

examples from *Cohen* and *Bartlett*, only serves to underscore the importance of the trial court's role as finder of fact. The extent to which the present case compares to *Cohen*, *Bartlett*, and other similar cases remains unclear without additional findings of fact by the trial court.

Indeed, Plaintiff has alleged several additional facts in support of the trial court's exercise of specific jurisdiction, namely that:

- Adient serves as the "First Tier" or "Just-In-Time" supplier of millions of automotive seats, . . . which were knowingly and intentionally sold by Adient for distribution through dealers.

- Adient is the largest manufacturer of automotive seats in the world, it supplies seats for vehicles sold by every major car manufacturer, and it supplies one out of every three seats worldwide. Millions of Adient's seats are on North Carolina roads right now.

- Adient manufactured 41,55[6] front passenger seats for 2013 to 2018 Nissan Altimas that were sold in North Carolina.

- Adient provides after-sale support and warranty parts for repairs of its seats, including seats sold in North Carolina.

- In manufacturing its seats, Adient contracted with at least 38 separate North Carolina-based businesses for the purchase of tooling equipment used to manufacture the seats, subcomponents installed in the seats, and fabric, foam, and other materials incorporated into its seats.

- Adient actively sent its employees to North Carolina in furtherance of its automotive seating business in North Carolina.

Meanwhile, Adient contends that it rebutted these factual allegations before the trial court below. Yet the court made no findings to resolve these disputed questions of fact, and we are without authority to "resolve issues of credibility or conflicting evidence." *Carolina Mulching Co. LLC v. Raleigh-Wilmington Invs. II, LLC*, 272 N.C. App. 240, 246, 846 S.E.2d 540, 545 (2020) (cleaned up), *aff'd*, 378 N.C. 100, 861 S.E.2d 496 (2021). "Where the evidence is conflicting, the [trial] judge must resolve the conflict. He sees the witnesses, observes their demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth." *Id.* at 246, 846 S.E.2d at 544–45 (cleaned up). We are thus confronted with conflicting and potentially outcome-determinative factual allegations that remain unresolved, but which we lack the authority to resolve.

Moreover, our review of the record suggests that the trial court may have determined this matter based upon a possible misapprehension of stream-of-commerce jurisprudence. In their memorandum in support of the motion to dismiss, the Adient Defendants argued that Plaintiff's factual assertions were irrelevant to specific jurisdiction, contending that "[t]he key element of the specific jurisdiction analysis is whether Plaintiff's claims arose out of or related to the Adient Defendants' activities in the State of North Carolina." (Original emphasis omitted). At oral argument before this Court, counsel for Adient asserted that Adient's contacts with North Carolina "are not what gives rise to . . . Plaintiff's claim, and . . . are not related enough to . . . Plaintiff's claim" to establish jurisdiction. However, in *Ford*, the United

States Supreme Court clarified that the "or relate to" portion of that element "contemplates that some relationships will support jurisdiction without a causal showing." 592 U.S. at 362, 209 L. Ed. 2d at 236.

Notably, in that case, Ford had argued that, because "the company sold the specific cars involved in these crashes outside the forum States, with consumers later selling them to the States' residents[,]" the plaintiffs' claims in those cases would have been "precisely the same if Ford had never done anything in Montana and Minnesota." *Id.* at 366, 209 L. Ed. 2d at 238–39 (citation omitted). This argument is similar to Adient's insistence that "Adient's only connection with North Carolina in this case resulted from the decisions of others," and that "at least with respect to model year 2017 Nissan Altima vehicles in general, and the Subject Vehicle in particular, Adient did not have (or create for itself) a relationship with North Carolina." (Original emphasis omitted). And at oral argument, Adient's counsel added that "the alleged contacts aren't, for the most part, Adient's actions, and they are not sufficient to show purposeful availment." Nevertheless, the *Ford* Court summarily dismissed this reasoning, as "that argument merely restate[d] Ford's demand for an *exclusively* causal test of connection—which [the Court had] already shown is inconsistent with [its] caselaw." *Id.* at 366, 209 L. Ed. 2d at 239 (emphasis added).

If Plaintiff's factual allegations are determined to have merit—which, again, we cannot determine—then Plaintiff plausibly may have properly invoked the trial court's specific jurisdiction over Adient based upon a proper application of the stream-

of-commerce test, or even the stream-of-commerce-plus test articulated by Justice O'Connor in *Asahi*.

Plaintiff likens this case to *Cox*, in which the defendant was an English manufacturer of a water-pressure sprayer that sold thousands of its sprayers and replacement parts to Pennsylvania distributors, one of whom the defendant knew was a wholesaler distributing goods to retail stores in the United States. 105 N.C. App. at 52, 411 S.E.2d at 641. The wholesale distributor sold some of the defendant's sprayers for resale to a retail store in North Carolina, which in turn sold the sprayers to the plaintiff's employer. *Id.* When one such sprayer exploded and damaged the plaintiff's eye to the extent that it required removal, the plaintiff sued the English manufacturer in North Carolina. *Id.* at 52–53, 411 S.E.2d at 641.

This Court upheld the trial court's exercise of specific jurisdiction because the "defendant was fully aware that [the Pennsylvania distributor] was a wholesaler which bought goods from manufacturers such as [the English] defendant and resold those goods in the United States." *Id.* at 55, 411 S.E.2d at 643. Even though the defendant neither had any further involvement with, nor control over, the sprayer or its distribution after its sale to the distributor—much as Adient asserts is the case here—we nevertheless held that the defendant had sufficient minimum contacts with North Carolina because the defendant purposefully injected its products into the stream of commerce, with full knowledge that they could reach North Carolina. *Id.* at 55–56, 411 S.E.2d at 643. "At no time did [the] defendant attempt to limit its area of

distribution so as to exclude North Carolina. These facts therefore indicate [the] defendant knew or reasonably should have known that, due to its relationship with [the Pennsylvania distributor], its products would be used in [other] states." *Id.* "As such, [the] defendant availed itself of the laws of these various states." *Id.* at 56, 411 S.E.2d at 643.

Finally, due to its determination that "[n]one of the Adient Defendants have sufficient contact with the State of North Carolina such that they would be subject to specific personal jurisdiction in North Carolina[,]" the trial court did not analyze any of the "other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Schaeffer*, 384 N.C. at 107, 884 S.E.2d at 704 (citation omitted). As stated above, these unaddressed factors include

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 107, 884 S.E.2d at 704–05 (cleaned up).

In his brief and again at oral argument, Plaintiff advances several arguments concerning these factors, such as his contention that if the trial court's order is affirmed, then a similarly situated plaintiff would be required "to file multiple lawsuits arising out of the same incident in multiple jurisdictions against multiple corporate defendants[,]" which "would be manifestly unfair, inefficient, and certainly

not compelled by the due process clause." The trial court did not reach the weighing of these "fair play and substantial justice" factors due to its disposition below and, for the reasons discussed above, we cannot weigh these factors for the first time on appeal. Indeed, analyzing these "fair play and substantial justice" factors may ultimately prove unnecessary on remand, depending upon the additional findings of fact. However, it underscores the prudence of remanding to the trial court for a potential determination of these factors, if warranted, because this Court is ill-equipped to make such a determination in the first instance.

In sum: the trial court did not make sufficient findings of fact concerning Plaintiff's stream-of-commerce argument, which our review suggests Plaintiff has pleaded and argued to such extent that it may have merit, if it is determined to be supported by the facts. But as this Court lacks the authority to make findings of fact and resolve evidentiary conflicts, we cannot appropriately review this appeal. "Accordingly, we decline to address [this] issue because disputed factual questions prevent this Court from engaging in meaningful appellate review." *LouEve*, 286 N.C. App. at 272, 880 S.E.2d at 438. The appropriate course is to remand to the trial court to provide that court with an opportunity to make additional findings of fact that resolves the conflicts in evidence, in accordance with the stream-of-commerce jurisprudence articulated herein.

## IV.    Conclusion

For the foregoing reasons, we vacate the trial court's order as to Adient and

remand for further proceedings. The court's order is affirmed as to the remaining Adient Defendants. On remand, "[t]he trial court is free to revisit [its] findings, although it is not required to do so, with the exception of the portions of the findings related to the" other Adient Defendants, which are affirmed by this Court. *42 E., LLC v. D.R. Horton, Inc.*, 218 N.C. App. 503, 520, 722 S.E.2d 1, 12 (2012). Because of this disposition, we make no determination as to the merits, if any, of Plaintiff's arguments concerning specific jurisdiction or consent by registration. *See id.* (stressing "that nothing in this opinion is intended to express any view on what conclusion the trial court should reach").

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

Judges GRIFFIN and STADING concur.